Nott, J.,
delivered the opinion of the c5urt:
This ease, which combiues a number of distinct causes of action, and has required a voluminous and difficult finding’ of facts, really presents but one or two questions of law. The eighth article of the contract between the parties provides that, u in all cases where stores have been transported under this agreement, a board of survey shall be called without delay, upon their arrival at the point of destination or delivery, to examine the quantity and condition of the stores transported, and in eases of loss, deficiency, or damage, to investigate the facts, and report the apparent causes, assess the amount of loss or injury, and state whether it toas attributable to neglect or the want of care on the part of the contractor, or to causes beyond his controlThe same article further provides that these proceedings shall be attached a to the bill of lading, and shall concltide the payment to be made on it.” It also provides that, u should no board of survey be mlled, through failure on the part of the Quartermaster Department or other military authority to convene one, it shall be considered that the contractor has delivered all the stores as specified in the bill of lading in good order and condition, and he shall ■ be paid accordingly.”
Under this agreement the claimant at various times, and by different trains, transported military supplies from Fort Leavenworth to Fort Lyon and other posts. In some cases there appeared to be a deficiency in the weight of the corn transported. The evidence generally satisfies us that the packages, that is to say, the sacks of corn, were delivered in good order, unbroken, and that the deficiency was due to shrinkage, and to a defect in the scales used at the point of destination. In pursuance of the terms of the agreement a board of survey was ordered, and the proceedings of the board are relied upon by the Government as a defense in this action. It may be a question whether the decision of such a board would in any event conclude the party *478 from seeking judicial relief. But here is a primary question, which is, whether the proceeding’s of the board conform to the terms of the contract.
These proceedings state that the board examined the supplies delivered, and' found “ packages all correct aud in good order with the exceptions of nine sacks of corn deficient; weight agreeing with the bill of lading with the exception of 4,240 pounds of corn deficient. The board, therefore, recommend that the deficiency be charged to the freight-contractor.”
It appears from the bill of lading that these sacks of corn averaged 118f pounds per sack.' It is therefore apparent that the nine missing sacks (for which no claim is made by the contractor) did not weigh 4,240 pounds; and that if ‘‘the packages” were all correct and in good order as found by the board, the deduction ordered was an arbitrary deduction which any clerk could have made by a simple comparison of the two weights, and that it involved the exercise of no real investigation or discretion.
But the rule which the parties established for themselves by their agreement was that in case of “ deficiency” the board of survey should “ investigate the facts and report the apparent causes, and assess the amount of loss or injury and state whether it ivas attributable to neglect or the want of care on the part of the contractor, or to causes beyond his control.” In none of these particulars do the proceedings of the board in any manner %arry out the intent and terms of the contract. The board did not investigate the facts; it did not report the apparent causes; it did not state whether the loss was attributable to neglect or to the want of care on the part of the contractor, or to causes beyond his control. As to all of these particulars the contractor had the right to receive the investigation of the board. The contract was so rigid in assuring him of that right that it provided that if the other party who alone had the power to convene a board should fail to do so, he should be deemed to have “ delivered all the stores as specified in the MU of lading in good order and condition, and be paid accordingly.” We do not mean to say that the failure of a board to investigate after it has been properly convened will work the same result in favor of a contractor, but we do think that when a board is convened it must carry out the intent of the agreement in its investigations, or else *479 its proceedings will not “ conclude the payments to be made,” nor be binding upon .tlie contractor.
As to tbe items for property taken from the trains by officers or soldiers, we are of the opinion that the facts stated throw the responsibility upon the claimant and not on the Government. As to the items for which the claimant accepted reduced payment and receipted in full without objection or protest, we are of the opinion that he is concluded from prosecuting them under the decisions of the Supreme Court in Clyde's and Justice's Cases.
The judgment of the court is that the' claimant recover the sum of $15,344.2S.
Drake, Ch. J., dissented.